### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARC VINCENT,** | : | |
| *Petitioner*, | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | **NO.   24-cv-1037** |
| **JOSEPH TERRA, SUPERINTENDENT** | : | |
| **OF SCI PHOENIX,** *et al.*, | : | |
| *Respondents*. | : | |

<u>**MEMORANDUM**</u>

**KENNEY, J.**                                                            **December 06, 2024**

In 1987, Petitioner Marc Vincent and his two parents moved to Brooklyn, New York from their native country of Haiti.  After decades of living in the United States as a lawful permanent resident, Vincent sought to become a United States citizen.  In March 2017, Vincent submitted his citizenship application, and it was approved.  Vincent was sworn in as a citizen in 2018.

Later that year, Vincent was arrested by the Philadelphia District Attorney's Office ("<u>DAO</u>") on allegations of crimes that took place before and after Vincent was naturalized.  Like many criminal defendants faced with the choice of a guilty plea and the certainty that comes with it versus a trial and the accompanying ambiguity, Vincent chose to plead guilty.  But just months later, based upon Vincent's admissions in his guilty plea, federal prosecutors charged Vincent with yet another crime:  criminal naturalization fraud.  According to the federal prosecutors, by pleading guilty to the crimes that took place before he was naturalized and by not disclosing those crimes in his naturalization application, Vincent had lied on his naturalization petition.  As a result, the federal prosecutors argued, Vincent must be stripped of his United States citizenship and face potential deportation back to Haiti—a country that he has not called home since 1987, when he was nine years old.

Presently before the Court is Vincent's Petition for a Writ of Habeas Corpus (ECF No. 1). In it, Vincent argues that his plea counsel never advised him of the consequences of denaturalization and deportation that arose from his guilty plea. According to Vincent, under the Supreme Court's landmark decisions in *Strickland v. Washington*, 466 U.S. 668 (1984) and *Padilla v. Kentucky*, 559 U.S. 356 (2010), his plea counsel had a constitutional duty to do so—and by failing in that duty, his plea counsel violated his Sixth Amendment right to effective assistance of counsel.

Neither party disputes that Vincent did not know of the possible consequences of denaturalization and deportation by pleading guilty. Nor do the parties dispute that Vincent's counsel failed to advise him of those potential consequences. Instead, the parties simply dispute whether, under *Strickland* and *Padilla*, his counsel had the duty to advise him of those consequences at all. This Court concludes that he did. Accordingly, the Court will grant Vincent's Petition for a Writ of Habeas Corpus.

## I.      FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Vincent emigrates to the United States and becomes a naturalized citizen.

In 1987, Vincent and his two parents moved from their native country of Haiti to Brooklyn, New York. ECF No. 1 at 4; ECF No. 18 at 1. In the years that passed, Vincent met and married his wife and started a family, including three biological children and two foster children. ECF No. 1 at 4. Vincent also attended and graduated from Lincoln Technical Institute as an automotive technician. *Id.* He then obtained gainful employment as a car salesman and mechanic, and later opened his own business, an automotive shop called M & M Auto in Philadelphia in 2012. *Id.*

---

[1]      The facts material to this case are undisputed by the parties.

After living in the United States for decades as a Lawful Permanent Resident, Vincent sought to become a naturalized United States citizen. *Id.*; ECF No. 12-1 ¶ 1.

On March 15, 2017, Vincent submitted a written application to become a United States citizen to USCIS. ECF No. 1 at 4; A008 ¶ 1.[2] In his written application, Vincent indicated that he had never been involved in "[f]orcing, or trying to force, someone to have any kind of sexual contact or relations," and confirmed that he had not "committed . . . [or] attempted to commit, a crime or offense for which [he was] not arrested." A009 ¶ 6. On January 17, 2018, Vincent attended an interview with a USCIS adjudicator and reaffirmed the answers on his written application under oath. *Id.*; ECF No. 1 at 4. On January 25, 2018, USCIS approved Vincent's application, A008 ¶ 2, and on February 9, 2018, Vincent was sworn in as a United States citizen, ECF No. 1 at 5.

### B. Vincent pleads guilty to charges brought by the Philadelphia District Attorney's Office and attends his plea hearing.

On July 21, 2018, Vincent was arrested and charged by the DAO with sexual assault and related offenses. ECF No. 1 at 5; A008 ¶ 3. On October 4, 2018, the DAO filed the Information, the official charging document, against Vincent. A021–26. The Information indicated that Vincent committed the crimes he was charged with on or about September 29, 2017, and at various times between July 1, 2015 and July 30, 2018. *Id.*

The DAO extended Vincent multiple plea offers. *See* ECF No. 1 at 5. Ultimately, Vincent decided to move forward with a negotiated guilty plea agreement, which also included a "Written Guilty Plea Colloquy." A041–44. The Written Guilty Plea Colloquy included a bold, all-caps

---

[2]    As an attachment to his Petition for a Writ of Habeas Corpus, Petitioner included an appendix (*see* ECF No. 1-1). Each page of the appendix starts with "A," followed by the Bates-stamped page number of the referenced page. The Court adopts that pagination and uses it herein.

heading entitled: "**RISK OF DEPORTATION (*If an Alien*)**." A043. Under that heading was

one sentence that read as follows: "I know that if I am not a United States citizen, it is possible I

may be deported if I plead guilty to the crime(s) charged against me." *Id.* Vincent's signature

appears at the bottom. *Id.*

On February 26, 2019, Vincent and his attorney, Attorney Sanita, appeared before Judge

Coleman in the Philadelphia Court of Common Pleas for his guilty plea hearing. A001; A008 ¶ 4.

At the guilty plea hearing, the trial court confirmed that Vincent had read, understood, and freely

signed the written colloquy. *See Com. v. Vincent*, No. 1647 EDA 2020, 2022 WL 4589785 at *1

(Pa. Super. Sept. 30, 2022). During the hearing, Judge Coleman reaffirmed what Vincent's

counsel had told him:

> THE COURT:    I do not know your status as a U.S. citizen, because I'm not
> allowed to ask. But if you are not this will lead to your
> deportation.
> MR. VINCENT:    Yes.

*Id.*; ECF No. 1 at 6. The court then accepted Vincent's guilty plea, and pursuant to the plea

agreement, sentenced Vincent to an aggregate term of 2.5 to 5 years' incarceration, followed by

five years' probation. *Vincent*, 2022 WL 4589785, at *1; A008 ¶ 4. The counts that Vincent pled

guilty to specifically indicated that the criminal conduct took place on September 29, 2017, and at

various times between July 1, 2015 and July 30, 2018—that is, on at least one occasion before

Vincent was naturalized. A009 ¶ 5.

### C. Just five months later, federal prosecutors charge Vincent with naturalization fraud.

On July 25, 2019, a federal grand jury returned an Indictment against Vincent. *Id.* ¶ 7. The

Indictment charged Vincent with two counts of procurement of citizenship unlawfully in violation

of 18 U.S.C. § 1425(a) and § 1425(b), and three counts of false statements in relation to

naturalization, in violation of 18 U.S.C. § 1015(a).  *Id.*  The charges were based upon the very same conduct that Vincent pled guilty to.  A002; *see* A009 ¶ 6.

According to the federal prosecutors, if Vincent were convicted under 18 U.S.C. § 1425(a) or § 1425(b), his naturalization would automatically be revoked.  A009 ¶ 8 (citing 8 U.S.C. § 1451(e)).  Once revoked, Vincent's citizenship would revert to that of a lawful permanent resident. *Id.*  And because his crimes constitute aggravated felonies, Vincent would face deportation back to Haiti under 8 U.S.C. § 1227(a)(2)(A)(iii).  *Id.*

### D. The Philadelphia Court of Common Pleas grants Vincent relief, the DAO appeals, and the federal prosecutors drop their charges.

On March 10, 2020, Vincent, represented by attorney Wayne Sachs, filed a motion to withdraw his guilty plea in the Philadelphia Court of Common Pleas.[3]  A028–33; A010 ¶ 9.  In the motion, Sachs argued that Vincent's plea was not "knowingly and voluntarily" entered as required by "due process," because "during the colloquy prior to the entry of the plea, [Vincent] . . . was erroneously advised [by the Court] that only a non-citizen could face the risk of deportation based on the guilty plea," while "[i]n point of fact, [he] **also** face[d] the near certainty of deportation based on the plea."  A028 (emphasis in original).  Had he "been aware that, in addition to the negotiated sentence and parole conditions, [he] could face denaturalization and presumptive deportation solely as a result of entering the plea," Petitioner would not have entered the plea.  *Id.*

---

[3]    In his motion, Vincent's counsel indicated that if "the Court [found] that counsel was under an obligation to enter a contemporaneous objection at the time of the plea," he would file a petition for relief under Pennsylvania's Post Conviction Relief Act.  A029 n.1.

However, Sachs also specifically stated that he was "not challenging Counsel's stewardship of the plea under the 6th Amendment."[4] A029 n.1.  Instead, Sachs challenged only the "error with respect to the judicial advisals which in turn were based on the objectively erroneous portion of [the Written Guilty Plea Colloquy]."  *Id.*  According to Sachs, this was "an issue of first impression."  ECF No. 10 at 88 (explaining that the "issue of first impression" was "whether the written guilty plea colloquy form [] is defective with regard to immigration advisals for criminal defendants who are naturalized U.S. citizens").

In response, the DAO moved to dismiss Vincent's motion.  A050–58.  In his Reply, Sachs repeated his argument that Vincent's claim of ineffectiveness centered on Judge Coleman's colloquy.  A060.  According to Sachs, "[t]he Court's advisal was objectively wrong, because it erroneously indicated to Mr. Vincent . . . that they faced no potential deportation consequences by virtue of pleading guilty."  *Id.*  But, "[i]n point of fact, . . . naturalized citizens face potential penalties (including de-naturalization and deportation) directly as a result of criminal convictions, which is precisely the circumstance faced by defendant Mr. Vincent."  *Id.*

On August 17, 2020, the parties appeared before Judge Coleman for his ruling.  A010 ¶ 12; ECF No. 1 at 11.  After converting Sachs's motion to withdraw into a petition for relief under the Post Conviction Relief Act (the "PCRA"), Judge Coleman granted the petition, vacated Vincent's conviction and sentence, and issued an opinion in support of his order.  A010 ¶ 12; A001–06.  Although Judge Coleman found that Vincent failed to raise his claim that his plea was involuntary and thus invalid because the colloquy did not relay "the consequences to his immigration status as

---

[4] Sachs indicated that, "should the Court find that counsel was under an obligation to enter a contemporaneous objection at the time of the plea," he would file a petition for relief under Pennsylvania's Post Conviction Relief Act, 42 Pa.C.S. § 9541, et seq.  A029 n.1.

a direct result of pleading guilty in front of the Court," he nonetheless granted relief on that claim. A003. According to Judge Coleman, because Vincent's circumstances were "unique" given that Vincent was a United States citizen at the time of his plea but not at the time of the crime, Vincent was entitled to relief on that claim. *Id.*

However, Judge Coleman denied Vincent's claim that plea counsel was ineffective "for not objecting to the standard plea colloquy." A004–05. Judge Coleman explained that although the "colloquy was not all encompassing enough to inform him that if he had lied on the application for naturalization," plea counsel "had a reasonable basis" because he only "delivered the standard colloquy at that point in time." A005. Judge Coleman also found that plea counsel's actions were "not prejudiced toward [Vincent]" given that he "was not aware of the Appellant's unique situation." *Id.*

Judge Coleman also made several notable factual findings. First, Judge Coleman found that Vincent "was not aware of the consequences to his immigration status as a direct result of pleading in front of the Court." A003. According to Judge Coleman, "the language that was present in the [Written Guilty Plea Colloquy] . . . does not clearly inform a person that if they had committed a crime or was committing a crime at the point of going through the naturalization process, that his or her guilty plea would cause the revocation of their naturalization process and cause him to face imminent deportation." A004. Thus, "due to the language set forth in the colloquy," plea counsel "was unaware of the direct consequences of the guilty plea" and Vincent's "unique situation." A003, A005.

Second, Judge Coleman found that the federal charges against Vincent for naturalization fraud were "based upon the same conduct to which [Vincent] ple[d] guilty before this Court." A002. Indeed, according to Judge Coleman, "the Federal Indictment was likely based solely upon

[Vincent's] guilty plea." *Id.* Third, Judge Coleman found that that it was a "foregone conclusion" that Vincent would be convicted of naturalization fraud given "how easy it [would] be for [f]ederal prosecution to prove their case." *Id.* According to Judge Coleman, Vincent "face[d] certain deportation because he was a citizen at the time of pleading guilty in front of this Court, but during the naturalization process, he was still committing the crime in which he was convicted." *Id.* Finally, Judge Coleman found that, "had [Vincent] been informed of the [immigration consequences], he would likely not have pled guilty." A006.

The DAO appealed Judge Coleman's ruling to the Pennsylvania Superior Court. A001 ¶ 13. Attorney Sachs continued to represent Vincent on appeal. ECF No. 1 at 11.

While the appeal was pending, on November 3, 2020, federal prosecutors filed a motion to dismiss Vincent's federal indictment without prejudice. *United States v. Vincent*, 2:19-cr-430-CFK (E.D. Pa.), ECF No. 19 (A007–13). According to the federal prosecutors, they were "planning on presenting evidence in support of the naturalization fraud charges pending before this Court"—namely, records of Vincent's "conviction and plea colloquy"—but given Judge Coleman's ruling, the "admissibility and validity of those records in a federal trial [were] now in question." A011 ¶ 15. As the federal prosecutors put it, "the government's reliance upon evidence" to prove their case "hinge[d] on the trajectory of [their appeal of Judge Coleman's ruling]." *Id.* The Court granted the motion that same day. *United States v. Vincent*, 2:19-cr-430-CFK (E.D. Pa.), ECF 20.

### E.  The Superior Court reverses the grant of PCRA relief and federal prosecutors reinstitute their charges.

On September 30, 2022, the Superior Court reversed the grant of PCRA relief. *Vincent*, 2022 WL 4589785, at *6. The Superior Court held that PCRA counsel's "challenge to the validity of his plea [was] waived," because he failed to "raise [that] claim at any time before filing his first

PCRA petition." *Id.* at *3. Because PCRA counsel had failed to "properly preserve" that claim, it was waived, and the PCRA court had "committed legal error in granting relief" on it. *Id.* Despite finding that Vincent's claims were waived, the Superior Court proceeded to analyze his claims under *Padilla* in *dicta*. *Id.* at *4. The Superior Court concluded that *Padilla* was "distinguishable" for a number of reasons, including because Vincent's claim focused on the deficiency of the **trial court's** colloquy, whereas "*Padilla* only addressed **counsel's** failure to advise a defendant of the immigration consequences of a guilty plea." *Id.* at *5 (emphasis in original). Finally, the Superior Court found that the "guilty plea colloquy was not defective." *Id.*

Vincent, through his PCRA counsel, Attorney Sachs, filed a petition for allowance of appeal to the Pennsylvania Supreme Court. *Com. v. Vincent*, 294 A.3d 1205 (Pa. 2023) (Table). That petition was denied on March 27, 2023. *Id.*

On June 20, 2023, federal prosecutors obtained a second indictment against Vincent. *U.S. v. Vincent*, 2:23-cr-269-CFK (E.D. Pa.), ECF No. 1. The indictment was nearly identical to the first. *Compare id.* with *United States. v. Vincent*, 2:19-cr-00430-CFK (E.D. Pa.), ECF No. 1. It charged Vincent with two counts of procurement of citizenship unlawfully and three counts of false statements in relation to naturalization. *See United States v. Vincent*, 2:23-cr-269-CFK (E.D. Pa.), ECF No. 1.

On May 17, 2024, following a hearing, the Court granted Vincent's motion for bail in his criminal naturalization fraud case.[5] *Id.*, ECF No. 49. In its Order, the Court explained that, as of February 26, 2024, Vincent had completed his entire five-year sentence on his state court

---

[5]    The federal prosecutors opposed a grant of bail. In their opposition, they contended that if Vincent were convicted of naturalization fraud, he would "fac[e] deportation back to Haiti." *United States v. Vincent*, 2:23-cr-269-CFK (E.D. Pa.), ECF No. 41 ¶ 8.

conviction.[6] *Id.* at 2.  And because trial on the criminal naturalization fraud case could not proceed until the Court decided Mr. Vincent's instant habeas petition, "denying bail would have the practical effect of requiring Mr. Vincent to serve the time required by a sentence for naturalization fraud" as well as all of "the time required by [his] state court conviction." *Id.*

On July 11, 2024, the federal prosecutors in Vincent's criminal naturalization fraud case filed a motion in *limine* seeking to admit Vincent's guilty plea agreement, among other things, as admissible evidence in that case.  *Id.*, ECF No. 55.  That motion in *limine* remains pending.  Trial in Vincent's naturalization fraud case has been continued given the pendency of Vincent's instant habeas petition.  *See id.*, ECF No. 59.

### F.  Vincent initiates this case in federal court.

On March 10, 2024, Vincent filed the instant Petition for a Writ of Habeas Corpus.[7]  ECF No. 1.  On March 28, 2024, the Court held a status conference in which the parties and counsel in this case appeared before the Court, as well as counsel in Vincent's pending criminal naturalization

---

[6]    Although Vincent is not currently in custody, the Court still has jurisdiction over the instant Petition because Vincent was incarcerated at the time it was filed.  *See Piasecki v. Ct. of Common Pleas, Bucks Cnty., PA*, 917 F.3d 161, 165–66 (3d Cir. 2019) ("A federal court has jurisdiction to entertain a petition for a writ of habeas corpus under § 2254 only if the petitioner was 'in custody pursuant to the judgment of a State court' when the petition was filed.").  Moreover, Vincent's Petition is not moot because he is still suffering from the collateral consequences of his state court conviction:  naturalization fraud charges and likely deportation back to Haiti, both of which are premised upon his state court conviction.  *See Steele v. Blackman*, 236 F.3d 130, 134 n.4 (3d Cir. 2001) ("Where a petition for a writ of habeas corpus is filed and subsequently the petitioner is released from custody, habeas corpus jurisdiction may be sustained where serious collateral consequences flow from the conviction." (citations omitted)); *United States v. Romero-Vilca*, 850 F.2d 177, 179 (3d Cir. 1988) (holding that a habeas petitioner's petition "is not moot in light of the potential for deportation that flows from his conviction," which is a "burdensome collateral consequence" that "survive the satisfaction of the sentence").

[7]    In the Petition, Vincent "request[ed] that the Court [order] . . . an evidentiary hearing [to] be conducted on all claims involving disputed issues of fact."  ECF No. 1 at 30.  At the status conference held on March 28, 2024, Vincent withdrew that request.  *See* ECF No. 16 at 3:22-4:2.

fraud case, *United States v. Vincent*, 2:23-cr-269-CFK (E.D. Pa.).  *See* ECF No. 4.  During the

status conference, the parties and the Court discussed the core issues in the case, including statute

of limitations issue.  *See* ECF No. 16 at 4:23–5:2 ("The Court: And we're looking at statute of

limitations issues.  And if it's not waived, then it's equitable tolling position.").

On April 18, 2024, the Court held another status conference with the parties.  ECF No. 11.

Following the status conference, the parties filed "Joint Stipulations in the Form of a Consent

Order," in which the parties indicated that they had stipulated to the following findings, among

others:

- "Some of the alleged conduct for which [Vincent] was charged predated his naturalization, and some postdated his naturalization."  ECF No. 12 ¶ 3.

- "The prosecution's stated factual basis for the plea [that Vincent entered into] included alleged conduct that occurred in 2017, which predated [Vincent's] naturalization."  *Id.* ¶ 6.

- "Unbeknownst to [Vincent, his guilty plea] would put him at a significant risk of denaturalization and deportation.  [Vincent's] plea counsel failed to advise [him] of these risks."  *Id.* ¶ 7.

- "The[] [federal naturalization fraud] charges were predicated on [Vincent's] above-described guilty plea, which, according to the federal prosecution, meant that [Vincent] had made false affirmations in the naturalization process."  *Id.* ¶ 9.

- "And if [Vincent] were found guilty of just one count of procuring citizenship unlawfully, he would have been automatically denaturalized, such that he would again be a Lawful Permanent Resident, and could face deportation to Haiti."  *Id.* ¶ 10.

- Judge Coleman granted "relief based on the conclusion that [Vincent's] due process rights were violated by the Court's plea colloquies, which stated that [Vincent] would face a risk of deportation if he were a noncitizen, but which were silent on the immigration consequences for a naturalized citizen like [Vincent]."  *Id.* ¶ 14.  And "[i]n reaching this conclusion, Judge Coleman made several factual findings that have never been challenged, including that neither [Vincent] nor his plea counsel were aware of the immigration consequences of [Vincent's] guilty plea when [Vincent] entered the plea."  *Id.* ¶ 15.

- After federal prosecutors appealed Judge Coleman's decision, "the federal prosecutors moved to dismiss [Vincent's] federal indictment without prejudice

because the admissibility and validity of [Vincent's] February 26, 2019 plea colloquy, convictions, and sentence were in question as a result of the PCRA litigation." *Id.* ¶ 17 (citing *United States v. Vincent*, No. 19-0430 (E.D. Pa. Nov. 3, 2020), ECF No. 19).

- "The Pennsylvania Superior Court reversed Judge Coleman's ruling, but it did not disturb any of Judge Coleman's factual findings." *Id.* ¶ 18.

- "The claim for relief before this Court is procedurally defaulted, but that procedural default is excused owing to the ineffective assistance of PCRA counsel for failing to raise this claim in PCRA proceedings." *Id.* ¶ 21.

- "[T]he claim before this Court was not adjudicated on the merits in state court, and this Court's review is *de novo*." *Id.* ¶ 22.

- "Based on the factual record developed in state court, [Vincent] has proven that he was denied effective assistance of counsel through plea counsel's failure to duly advise him of the immigration consequences of his guilty plea—namely, the risk of denaturalization and deportation that flowed directly from his plea." *Id.* ¶ 23 & n.7 (citing *Padilla*, 559 U.S. 356).

Notably, the DAO did ***not*** raise its statute of limitations defense.  *See generally id.*  Additionally, in the final paragraph, the parties indicated that the "grant of habeas corpus [would be] conditioned on [Vincent's] entry of a new, negotiated plea . . . [that would be] predicated exclusively on conduct that occurred after [Vincent] became a United States citizen." *Id.* ¶ 24(c).  The parties also indicated that if that negotiated plea was not executed, the parties "may return to [the] Court for further proceedings." *Id.*

The next day, the Court held another status conference with the parties to discuss the consent order.  ECF No. 13.  After discussion with the parties, the Court decided not to enter the consent order.  Instead, it entered an Amended Scheduling Order issuing deadlines for the DAO's Response and Vincent's Reply, and moved the habeas litigation forward.  ECF No. 14.

On June 3, 2024, the DAO filed its Response.  ECF No. 18.  In it, the DAO did not raise, or at all mention, its statute of limitations defense.  *See generally id.*  The DAO also indicated that it was "undisputed that the parties and the court were unaware of any potential immigration

consequences at the time of Vincent's plea, and therefore plea counsel did not advise Vincent that he could possibly be deported." *Id.* at 10.

On July 2, 2024, Vincent filed his Reply. ECF No. 21. In it, Vincent argued, among other things, that the DAO had "[d]eliberately [w]aived" its Antiterrorism and Effective Death Penalty Act ("AEDPA") statute of limitations defense. *See id.* at 1–3. The DAO did not file a surreply.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2254(d), "where a habeas petitioner's claim was 'adjudicated on the merits' in state court, the petition may not be granted unless the state court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Simmons v. Beard*, 590 F.3d 223, 231 (3d Cir. 2009) (citing 28 U.S.C. § 2254(d)). But where the state court did not consider a claim on its merits, and cause and prejudice excuse procedural default of that claim, as is the case here for the reasons described *infra*, the § 2254(d) standard does not apply. *See id.* at 232 (citation omitted). Instead, the Court must review all questions of law and mixed questions of law and fact *de novo*. *See id.*; *see also Bey v. Superintendent*, 856 F.3d 230, 244 (3d Cir. 2017) (same). However, 28 U.S.C. § 2254(e)(1) "still mandates that the state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence." *Simmons*, 590 F.3d at 231 (citations omitted).

As applied here, the facts found by Judge Coleman at the state trial court level must be afforded deference unless rebutted by clear and convincing evidence. Any questions of law or questions of mixed fact and law, however, are before the Court *de novo*. *Farhane v. United States*,

121 F.4th 353, 362 (2d Cir. 2024) (en banc) ("Whether defense counsel rendered ineffective assistance presents a mixed question of law and fact that we review de novo.").

### III.   DISCUSSION

Before the Court can turn to the merits of Vincent's claim, it must address any potential procedural infirmities.  There are two:  (1) a potential statute of limitations issue under AEDPA, and (2) procedural default.  On the first, the Court finds that the DAO has waived any statute of limitations defense, and thus, Vincent's petition is timely.  On the second, the Court finds that the equitable exception established in *Martinez v. Ryan*, 566 U.S. 1 (2012) excuses Vincent's procedural default.

On the merits, Vincent argues that his plea counsel violated his Sixth Amendment right to effective assistance of counsel by not advising him of the immigration consequences arising from his guilty plea before he entered it.  ECF No. 1 at 19–25.  This Court agrees.

### A. The DAO waived any affirmative statute of limitations defense it had under AEDPA.

Under AEDPA, Vincent had until April 17, 2023 to file this Petition.  *See* ECF No. 1 at 18.[8]  That fact appears to be undisputed.  *See id.*; *see generally* ECF No. 21.  The instant Petition,

---

[8]     The calculation of the date that the statute of limitations terminated under AEDPA is complicated.  The Court sets forth a brief explanation here for the reader's benefit, although notes that what matters for the sake of this case is the issue of waiver. For the reasons stated above, the Court finds that the DAO waived any statute of limitations defense they had when they failed to raise it in their Response.  *See generally* ECF No. 21.

Under 28 U.S.C. § 2244(d)(1), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court."  That one-year limitation period runs from "the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1).  Because Petitioner did not file a direct appeal, the limitation period runs from "the expiration of the time for seeking [direct] review," *id.*, that is, the last day Petitioner could have

filed on March 10, 2024, is therefore facially untimely.

However, "in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto." *Day v. McDonough*, 547 U.S. 198, 202 (2006) (citing Fed. R. Civ. P. 8(c), 12(b), and 15(a)). And while a district court may "consider timeliness *sua sponte*" so long as "the parties [had] 'fair notice and an opportunity to present their positions,'" *In re Rosado*, 7 F.4th 152, 157 (3d Cir. 2021) (citation omitted), it would be an abuse of discretion for the Court to do so if a State "deliberately waived" its limitations defense, *see Day*, 547 U.S. at 202. A state deliberately waives its statute of limitations defense when it "intentional[ly] relinquish[es] or abandon[s] [] a known right." *See Wood v. Milyard*, 566 U.S. 463, 474–75 (2012) (citations omitted) (holding that "the Tenth Circuit abused its discretion when it dismissed Wood's petition as untimely," given that the "[s]tate was well aware of the statute of limitations defense available to it," but deliberately waived that defense).

Here, it is evident that the DAO deliberately waived its statute of limitations defense given that it never raised this defense despite having multiple opportunities to do so—and despite being put on notice of this defense multiple times. It did not assert this defense during the March 28, 2024 status conference with the Court, even though the Court explicitly raised the issue. *See* ECF

---

filed a direct appeal. Under Pennsylvania rules, Pa. R. App. P. 108(d)(2), that date was March 30, 2020.

However, 28 U.S.C. § 2244(d)(2) tolls the limitation period during the time that a PCRA petition is pending. *See Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002). Because the Pennsylvania Supreme Court denied his petition on March 27, 2023, that is the date tolling ended.

Petitioner filed his PCRA petition on March 10, 2020. *See* ECF No. 1 at 18. Thus, he only had 20 days left in his limitations period, *i.e.*, until March 30, 2020. Because his deadline was tolled until March 27, 2023, the Court adds 20 days to that deadline, making April 17, 2023 Petitioner's statute of limitations deadline. As a result, his Petition (ECF No. 1), which was filed on March 10, 2024, is facially untimely.

No. 16 at 4:23–5:2 ("The Court: And we're looking at statute of limitations issues. And if it's not waived, then it's equitable tolling position."). It did not assert it in the Joint Stipulations of Fact and Law filed with the Court on April 18, 2024. *See generally* ECF No. 12-1. It did not assert it in its Response to the Petition, even though Vincent explicitly raised the issue himself. *See* ECF No. 1 (Pet.) at 18 (explaining that the Petition "is facially untimely" under the statute of limitations defense); *see generally* ECF No. 21 (no mention of statute of limitations). And even once Vincent argued in his Reply that the DAO had "clearly made the decision ***not*** to challenge the timeliness of the instant habeas petition," the DAO elected not to file a surreply to assert its defense. *See* ECF No. 21 (Pet. Reply) at 1–2 (emphasis in original). Accordingly, the Court finds that the Commonwealth deliberately waived its statute of limitations defense, and will not override that waiver.

## B. The exception established in *Martinez* and its progeny excuse Vincent's procedural default.[9]

It is undisputed that Vincent did not exhaust the claim that he asserts here—that Vincent was deprived effective assistance of counsel due to counsel's failure to duly advise Vincent of the risk of deportation—in PCRA proceedings. *See* ECF No. 1 at 10; ECF No. 18 at 6. Accordingly, Vincent's claim is procedurally defaulted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)

---

[9]    In his opening brief, Vincent raises for the Court's attention *Shinn v. Ramirez*, 596 U.S. 366 (2022) which, as Vincent accurately summarizes, "limited the ability of habeas petitioners to develop new evidence in federal court when the petitioner 'failed to develop the facts supporting [a] new merits claim in state court.'" ECF No. 1 at 27 (citing *Williams v. Superintendent*, 45 F.4th 713, 724 (3d Cir. 2022)). *Shinn* need not preclude Vincent's claim here, however, given that Vincent is not seeking to develop the record further. To the contrary, both parties agree on the material facts to the dispute—including the facts that "the parties and the court were unaware of any potential immigration consequences at the time of Vincent's plea" and that "plea counsel did not advise Vincent that he could possibly be deported." ECF No. 18 at 10.

("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *Landano v. Rafferty*, 897 F.2d 661, 669 (3d Cir. 1990) (explaining that exhaustion requires the petitioner to present to the state courts the same factual and legal theories supporting his habeas claim).

However, the parties agree that under *Martinez v. Ryan*, the Court may excuse procedural default if Vincent "can show that (1) his procedurally defaulted ineffective assistance of trial counsel claim has 'some merit'"; and that (2) his PCRA counsel performed deficiently under the standards established in *Strickland v. Washington*. *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019) (citing *Martinez*, 566 U.S. at 14; *Strickland v. Washington*, 466 U.S. 668 (1984)). Here, the Court finds that Vincent satisfies both prongs.

### 1. Vincent's procedurally defaulted claim clearly has "some merit."

"To demonstrate that his claim has some merit, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 938 (quotations omitted) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)). As the Third Circuit acknowledged in *Workman* and *Cox*, that standard—which was established by the Supreme Court in *Miller-El*—is analogous to the standard that applies when courts decide whether to issue a certificate of appealability. *Id.* at 937-38 (citing *Miller-El*, 537 U.S. at 336); *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014).

Vincent's procedurally defaulted claim does not just have "some merit"; for the reasons discussed in Section III(C) *infra*, the Court will grant it. But at the very least, reasonable jurists

could debate over its merit.  That much is clear from the Second Circuit's decisions in *Farhane* and the Third Circuit's reasoning in *Singh v. Att'y Gen.*, 12 F.4th 262 (3d Cir. 2021).

### a. The Second Circuit's decisions in *Farhane* plainly support a finding that Vincent's claim has "some merit."

In *Farhane*, Petitioner Farhane moved to vacate his plea, conviction, and sentence pursuant to 28 U.S.C. § 2255 based upon ineffective assistance of counsel.  *United States v. Farhane*, No. 05 CR. 673-4 (LAP), 2020 WL 1527768, at *1 (S.D.N.Y. Mar. 31, 2020).  Farhane's claim was effectively identical to the claim Vincent makes here.  Farhane—a naturalized United States citizen who pled guilty to crimes that took place before his naturalization and then faced charges for naturalization fraud on the basis of his guilty plea—claimed that his attorney was ineffective because his attorney "never advised [Farhane] that pleading guilty might lead to denaturalization and possibly deportation."  *Id.*

Although the district court denied his motion, the Second Circuit allowed Farhane's claim to proceed to appeal by granting his motion for a certificate of appealability.  *Farhane v. United States*, 77 F.4th 123, 126 (2d Cir. 2023), *vacated*, 121 F.4th 353 (2d Cir. 2024) (en banc).  And although the Second Circuit initially affirmed the district court's decision, it did so after granting a certificate of appealability, and only through a divided panel (a 2-1 majority)—which, in and of itself, demonstrates that reasonable jurists could debate the merits of Farhane's claim.  *See id.*

If that were not enough to satisfy the "some merit" standard, after granting Farhane's petition for rehearing *en banc*, the Second Circuit ruled in Farhane's favor, vacated the decision of the prior panel majority and the judgment of the district court, and remanded to the district court for further proceedings consistent with its opinion.  *Farhane*, 121 F.4th at 359, 376–77.  The *en banc* panel held that, under *Padilla*, "criminal defense attorneys have a Sixth Amendment obligation to inquire into and advise a naturalized citizen client of any risk of deportation following

denaturalization proceedings that accompany the client's guilty plea, just as they do for a deportation risk facing a noncitizen client." *Id.* at 358. The Court could rule on the basis of *Farhane* alone that Vincent's claim has "some merit."

### b. The Third Circuit's commentary on *Padilla* in *Singh* further supports a finding that Vincent's claim has "some merit."

The Third Circuit's reasoning in *Singh* provides additional support for a finding that Vincent's claim has "some merit." In that case, Petitioner Singh, a naturalized citizen, had pled guilty to certain drug conspiracy crimes that took place after his naturalization. *Singh*, 12 F.4th at 267. Several years after his convictions, the government successfully revoked Singh's naturalization. *Id.* at 266–67. Unlike in this case, the government did not revoke Singh's naturalization on the basis of Singh's criminal convictions. Instead, the government did so after it learned that Singh "was never lawfully admitted for permanent residence," and also had fraudulently concealed a deportation order in his naturalization application. *Id.* at 267. After revoking his citizenship, DHS sought to deport Singh under the "controlled substances" and the "aggravated felony" provisions of the Immigration and Nationality Act ("INA") given his drug convictions.[10] *Id.*.

In his Third Circuit petition, Singh argued that the INA provisions did not apply because he was a naturalized citizen at the time of his conviction, and although he subsequently lost his citizenship, that loss could not retroactively make him an "alien" within the meaning of either INA

---

[10]    More specifically, DHS charged Singh with "removability under 8 U.S.C § 1227(a)(2)(A)(iii) (the '"aggravated felony provision' of the Immigration and Nationality Act ("INA")) for having been convicted of an offense relating to illicit trafficking in controlled substances, and under 8 U.S.C § 1227(a)(2)(B)(i) (the 'controlled substances provision' of the INA) for having been convicted of a controlled substances crime." *Singh*, 12 F.4th at 267.

provision.[11]  *Id.*  According to Singh, if the court were to "allow those who were citizens at the time of conviction to be subsequently removed on the basis of their subsequent denaturalization and their convictions[] without receiving the protection of the right to be warned of the immigration consequences of a guilty plea," that outcome would conflict with "his Sixth Amendment right to counsel as described in *Padilla*."  *Id.* at 278 n.15.

The Third Circuit granted Singh's petition.  *Id.* at 279.  Although the Third Circuit found that *Padilla* did not "expressly apply" to the facts in Singh,[12] the Third Circuit still found that "Singh's case raise[d] a constitutional concern in the spirit of *Padilla*"—namely, that he was "facing removal, 'a particularly severe penalty[,]' for his conviction from a guilty plea, [which he] made without notice of the immigration consequences that could flow from the plea."  *Id.* at 278 n.15 (citing *Padilla*, 559 U.S. at 365).  The Third Circuit also rejected the government's argument that "Singh should have known that, should his fraud be uncovered, he could be found removable."  *Id.*  As the Third Circuit put it:  the court does "not generally premise procedural protections on what a criminal defendant 'should' know.  It is precisely because many criminal defendants do not

---

[11]    By their plain text, both the aggravated felony provision and the controlled substances provision apply only to "alien[s]."  *See* 8 U.S.C §§ 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.").

[12]    In finding that *Padilla* did not "expressly appl[y]" to Singh, the Third Circuit noted that *Padilla* applies "only to noncitizens pleading guilty."  *Singh*, 12 F.4th at 278 n.15.  But the Third Circuit likely drew that distinction because Singh was a naturalized citizen who was convicted of crimes that he committed while he was a citizen.  Vincent's case is unique; although he was a naturalized citizen at the time of his guilty plea, the crimes he pled guilty to were committed before and after he was a citizen.

know the consequences of pleading guilty that we require detailed notice of the resulting penalties." *Id.*

The Third Circuit's reasoning in *Singh* provides clear support for Vincent's claim here.[13] As in *Singh*, Vincent's deportation flows from his guilty plea, even though Vincent did not receive any notice of the immigration consequences that would follow from that plea. And as the Third Circuit stated in *Singh*, it is precisely because Vincent would not have known that his guilty plea could result in his denaturalization and deportation that counsel must warn him beforehand—and is precisely why Vincent's claim has at least "some merit."

### 2. PCRA counsel performed deficiently.

A lawyer performs deficiently when "there is simply no rational basis to believe that counsel's failure to argue the . . . issue [] was a strategic choice." *Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 763 (3d Cir. 2018) (citation omitted). That is precisely the case here. There is no rational basis to believe that PCRA counsel's failure to argue Vincent's *Padilla* claim was a "strategic choice."

First, it is clear that PCRA counsel's failure to argue the *Padilla* claim was not strategic given that he omitted it in favor of a "clearly and significantly weaker" claim. *Workman*, 915 F.3d

---

[13]    To be sure, the fact pattern in *Singh* differs slightly from the one presented here. The crimes that Singh pled guilty to took place after he was a citizen, unlike here. Moreover, Singh's denaturalization was predicated upon his failure to disclose his prior immigration history, whereas his deportation was predicated upon his guilty plea; here, Vincent's naturalization fraud case and subsequent, potential deportation are both based on his guilty plea. These differences, however, only strengthen Vincent's claim that he should have been advised of the immigration consequences of his guilty plea under *Padilla*. If the facts of *Singh* "raise[d] a constitutional concern in the spirit of *Padilla*" even though it was only Singh's deportation, not his denaturalization, that stemmed from his guilty plea, then *Padilla* certainly must apply where the risks of denaturalization **and** deportation stem from Vincent's conviction. *See Singh*, at 278 n.15 (citing *Padilla*, 559 U.S. at 365).

at 942 ("A petitioner may rebut the suggestion that the challenged conduct reflected merely a tactical choice by showing that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." (citation omitted)).  By omitting Vincent's *Padilla* claim and instead pursuing a claim that the guilty plea colloquy was deficient for failing to advise naturalized citizens of immigration consequences, PCRA counsel traded a claim that applied Supreme Court precedent for a claim that he knew was grounded in no precedent at all. Indeed, counsel himself described the claim as an "issue of first impression."  ECF No. 10 at 88 (indicating that his PCRA petition "raise[d] an issue of first impression: namely, whether the written guilty plea colloquy form [] is defective with regard to immigration advisals for criminal defendants who are naturalized U.S. citizens").

Second, there is no reason that PCRA counsel could not have argued the claim that he raised in addition to Vincent's *Padilla* claim.  The DAO cites *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) for the proposition that "[PCRA c]ounsel had no obligation to raise every possible claim," ECF No. 18 at 7, but this case is nothing like *Sistrunk*.  In *Sistrunk*, appellate counsel chose to not raise a jury selection claim because, under the governing law at the time, it "would have been doomed to failure."  *See* 96 F.3d at 671.  It was only under *Batson v. Kentucky*, 476 U.S. 79 (1986), which was decided after she filed her brief, that the jury selection claim could have been meritorious.  *See Sistrunk*, 96 F.3d at 671.  Thus, the Third Circuit held that counsel was not "constitutionally deficient [simply] because she did not find the likelihood [that *Batson* would be decided as it was] sufficient to alter her appellate advocacy strategy."  *Id.* at 672.

That is not what happened here.  Vincent's *Padilla* claim was not "doomed to failure" under governing law.  To the contrary—and as discussed further below—Vincent's claim merely requires a straightforward application of the principles announced in *Padilla*.  And even if PCRA

counsel believed in the strength of the claim he did raise, there was nothing that precluded him from raising the *Padilla* claim too. In fact, the record makes clear that PCRA counsel knew of and in fact cited *Padilla* in his brief in support of his deficient guilty plea colloquy claim; he simply failed to raise *Padilla* in the Sixth Amendment context.[14] He could have—and should have—raised both.

Third, the DAO argues that PCRA counsel's initial success in PCRA court defies a finding of constitutional deficiency, but that argument is meritless. *See* ECF No. 18 at 7–8. Even though the PCRA court initially provided Vincent with relief on his deficient guilty plea colloquy claim, *see* A003-04, it did so in legal error. As the Superior Court found, PCRA counsel failed to "properly preserve" his defective plea colloquy claim because he "did not raise [it] at any time before filing his first PCRA petition," and thus, waived it. *Vincent*, 2022 WL 4589785 at *3. PCRA counsel's failure to properly preserve the sole claim that succeeded before the PCRA court only reinforces the Court's conclusion: PCRA counsel's performance was constitutionally deficient.

   **C. By failing to advise Vincent of the immigration consequences of his guilty plea, plea counsel violated Vincent's Sixth Amendment right to effective assistance of counsel.**

In *Padilla v. Kentucky*, the Supreme Court held "that the Sixth Amendment requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a

---

[14] *See* A031 ("As the Court is intimately aware, the Supreme Court in *Padilla* recognized the inextricable link between immigration penalties and criminal convictions, and this recognition formed the basis for holding that the 6th Amendment required attorneys to ensure that the rights of non-citizens criminal defendants were accurately protected. The instant case presents a different issue: to wit, what is the effect of a judicial advisal, such as the one in the instant case, which imparts erroneous information with respect to the possible deportation penalties associated with pleading guilty?").

guilty plea." *Chaidez v. United States*, 568 U.S. 342, 344 (2013) (citing *Padilla*, 559 U.S. at 374).

Thus, the Court held that *Strickland* applied to Padilla's claim that his counsel violated his Sixth

Amendment right to effective assistance by failing to advise him of the immigration consequences

of his guilty plea. *Padilla*, 559 U.S. at 366.

The parties do not dispute that, as in *Padilla*, the *Strickland* test applies to determine

whether Vincent can prevail on his ineffective assistance of counsel claim.[15]  Indeed, the DAO's

Response assumes as such, and instead only disputes whether Vincent can make the showing

---

[15]    The parties are right to agree that under *Padilla*, *Strickland* governs Vincent's claim.  As in *Padilla*, denaturalization and deportation are "severe penalt[ies]" that are "nearly an automatic result" of Vincent's conviction.  559 U.S. at 366.  That much is clear from the sequence of events in this case.  Just five months after Vincent pled guilty, federal prosecutors swiftly initiated their naturalization fraud case.  A008 ¶ 4 (indicating Vincent pled guilty on February 26, 2019), ¶ 7 (indicating that the Indictment was issued on July 25, 2019). And less than three months after Judge Coleman vacated Vincent's guilty plea, those same federal prosecutors filed a motion to dismiss Vincent's indictment with prejudice. *Id.* ¶ 12 (indicating that the Court of Common Pleas vacated Vincent's conviction on August 17, 2020); A013 (filing motion to dismiss on November 3, 2020).

Then, once the Superior Court reversed the Court of Common Pleas' vacatur of Vincent's conviction and the Pennsylvania Supreme Court declined to hear Petitioner's appeal, federal prosecutors again secured a second indictment for naturalization fraud against Petitioner.  *See Vincent*, 2022 WL 4589785 at *6 (reversing the Court of Common Pleas on September 30, 2022); *Com. v. Vincent*, 294 A.3d 1205 (Pa. 2023) (Table) (denying Petitioner's appeal on March 27, 2023); *U.S. v. Vincent*, 2:23-cr-269-CFK (E.D. Pa.), ECF No. 1 (indicting Petitioner on June 20, 2023).

Therefore, as in *Padilla*, it is "most difficult" to "divorce" the risk of denaturalization and deportation from Vincent's guilty plea.  559 U.S. at 366.  *See also Farhane*, 121 F.4th at 363 ("Because a guilty plea to a conviction that exposes a criminal defendant to the risk of denaturalization necessarily exposes him to the risk of deportation, a straightforward application of *Padilla*—holding that 'counsel must inform her client whether his plea carries a risk of deportation,' 559 U.S. at 374[]—resolves the question. Alternatively, because denaturalization is a 'particularly severe' consequence, and 'nearly an automatic result' of a guilty plea to certain offenses, advice regarding denaturalization, like advice regarding deportation, 'is not categorically removed from the ambit of the Sixth Amendment right to counsel.' *Id.* at 365–66[]. To provide effective representation, counsel must advise her client as to that paired set of serious adverse immigration consequences by at least flagging the risk.").

required for a finding of ineffective assistance under *Strickland*. *See* ECF No. 18 at 8 (arguing that "[t]he *Strickland* standard for ineffective assistance of counsel claims applies to actions by counsel during plea negotiations," and explaining that "[a] petitioner can establish deficient performance [under *Padilla*] if his or her attorney provided false or inaccurate advice that the plea would not result in deportation").

Accordingly, the Court focuses its inquiry on whether Vincent's claim can succeed under the *Strickland* test. To prevail under *Strickland*, Vincent must establish that (1) his plea counsel's performance was constitutionally deficient, and (2) that his plea counsel's errors prejudiced him— that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Padilla*, 559 U.S. at 366 (citation omitted); *Strickland*, 466 U.S. at 668, 694; *Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 391, 396 (3d Cir. 2020). Vincent has established both prongs.

### 1. Under *Strickland*'s first prong, plea counsel's performance was constitutionally deficient.

Under the first prong in *Strickland*, the Court must first determine whether counsel's representation "fell below an objective standard of reasonableness." *Padilla*, 559 U.S. at 366. In finding that Padilla "sufficiently alleged constitutional deficiency,"[16] the Court focused on three principles, each of which is relevant here. *Id.* at 369.

First, the *Padilla* Court explained that whether counsel's representation was objectively reasonable is an inquiry that "is necessarily linked to the practice and expectations of the legal

---

[16] The Supreme Court of Kentucky denied Padilla postconviction relief because, in its view, Padilla's allegations could not provide a basis for relief under the Sixth Amendment. *Padilla*, 559 U.S. at 359. Thus, the *Padilla* Court investigated whether Padilla **could** allege a Sixth Amendment ineffective assistance of counsel claim, assuming his allegations were true. *Id.*

community," as "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 366 (citation omitted).  The *Padilla* Court then went on to examine those "prevailing professional norms," and concluded that "[a]uthorities of every stripe—including the American Bar Association, criminal defense and public defender organizations, authoritative treatises, and state and city bar publications—universally require defense attorneys to advise as to the risk of deportation consequences for non-citizen clients."[17] *Id.* at 367 (citations omitted).

Second, the *Padilla* Court explained that its holding was not limited to "affirmative misadvice." *Id.* at 370.  As the *Padilla* Court observed, to limit its holding to affirmative misadvice would "invite two absurd results":  (1) "it would give counsel an incentive to remain silent on matters of great importance, even when answers are readily available" and (2) "it would deny a class of clients least able to represent themselves the most rudimentary advice on deportation even when it is readily available." *Id.* at 370–71.

Third, the *Padilla* Court recognized that there are "numerous situations in which the deportation consequences of a particular plea are unclear or uncertain." *Id.* at 369.  In Padilla's case, the Court found that "the deportation consequence [was] truly clear," and thus, "the duty to give correct advice [was] equally clear." *Id.*.  But in situations where such consequences are not

---

[17]    Although Padilla himself was a non-citizen, this Court does not read *Padilla* to be limited only to non-citizens.  As the Second Circuit explained in *Farhane*, to limit *Padilla*'s holding to noncitizens would "construe *Padilla* as providing stronger protection to a noncitizen at risk of deportation (like Padilla) than to a *U.S. citizen* at risk of denaturalization followed by deportation (like Farhane)." 121 F.4th at 371.  After all, that would mean Vincent "would have been better off had he never pursued naturalization: had he been merely a lawful permanent resident when he pleaded guilty, rather than a naturalized citizen, *Padilla* would settle that *Strickland* governed his ineffective assistance claim." *Id.*

as clear, the *Padilla* Court still imposed an obligation on the defense attorney: to advise his client that "pending criminal charges may carry a risk of adverse immigration consequences." *Id.*

In *Orocio*, applying *Padilla*, the Third Circuit held that Petitioner Orocio sufficiently alleged that his counsel was constitutionally deficient for failing to advise him that a guilty plea carried a risk of deportation. 645 F.3d 630, 642–43 (3d Cir. 2011), *abrogated on other grounds by Chaidez*, 568 U.S. 342.[18] "The facts of Padilla closely mirror[ed] those presented [in *Orocio*]." *Id.* at 641. Like Padilla, Orocio pled guilty to drug charges. *Padilla*, 559 U.S. at 359; *Orocio*, 645 F.3d at 634. And just like in *Padilla*, Orocio alleged that his attorney failed to advise him of the "near-certain removal consequence of pleading guilty to a controlled substance offense." *Padilla*, 559 U.S. at 359; *Orocio*, 645 F.3d at 642. Although "Orocio [did] not allege that [his attorney] affirmatively misled him," given that "the *Padilla* Court expressly rejected any requirement that a defendant be affirmatively misled," the Third Circuit still found that Orocio sufficiently alleged that his attorney was constitutionally deficient. *Orocio*, 645 F.3d at 642–43 ("[I]t is beyond cavil that Mr. Orocio's counsel was constitutionally deficient under the first prong of the *Strickland* inquiry if, as is alleged, he did not advise Mr. Orocio of the adverse immigration consequences of his guilty plea to a controlled substance offense in accordance with the then-prevailing professional norms.").

To determine whether Vincent's plea counsel performed deficiently, the Court need only conduct a straightforward application of the principles established by the Supreme Court in *Padilla*

---

[18]    In 2011, the Third Circuit held in *Orocio* that *Padilla* is "retroactively applicable." 645 F.3d at 635. Two years later, in *Chaidez*, the Supreme Court held that *Padilla* "does not have retroactive effect." 568 U.S. at 344. While *Chaidez* abrogated *Orocio*'s holding that *Padilla* applied retroactively, it does not disturb the Third Circuit's legal reasoning on the other issues discussed by the court.

and the Third Circuit in *Orocio*.  To begin, the prevailing professional norms in *Padilla* clearly apply to Vincent's attorney's conduct here.  If "authorities of every stripe" universally required defense attorneys to advise as to deportation consequences back in 2010 when *Padilla* was decided, they certainly still applied to Vincent's plea counsel when he represented Vincent in 2019.

Additionally, while the DAO points out that "there is nothing in the record to support" Vincent's contention that plea counsel "affirmatively misadvised him," *Padilla* and *Orocio* make clear that *Padilla*'s holding is not limited to "affirmative misadvice."  *Padilla*, 559 U.S. at 369–70; *Orocio*, 645 F.3d at 642 (explaining that "the *Padilla* Court expressly rejected any requirement that a defendant be affirmatively misled").  Instead, the undisputed fact that "plea counsel did not advise Vincent that he could possibly be deported" is enough for a finding of deficient performance.  ECF No. 18 at 10; *see Padilla*, 559 U.S. at 371 ("It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.'"); *Orocio*, 645 F.3d at 641 ("[T]he failure of defense counsel to warn a defendant that a plea would make the defendant eligible for removal is a constitutional defect in representation that satisfies the first prong of the *Strickland* test." (citation omitted)); *Farhane*, 2024 WL 4634065, at *12 (rejecting the government's argument that "the Sixth Amendment applies to affirmative misadvice regarding the risk of denaturalization but not to a wholesale failure to advise on that risk" because the Supreme Court "roundly rejected an argument based on this very distinction in *Padilla*").

The DAO also argues that Vincent's plea counsel cannot be held accountable for failing to advise Vincent of his immigration consequences because those "consequences were not clear or

certain."[19]  ECF No. 18 at 10.  According to the DAO, "this lack of clarity stemmed from Vincent's own failure to inform his attorney of his immigration history and his untruthful representations during his naturalization process."  *Id.*  Even assuming that it is true that Vincent never disclosed to counsel his immigration status or the representations he made during his naturalization process, *Strickland* and cases that interpret it do not impose that obligation on the client.  They impose it on the attorney.

Under *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690–91.  But "reasonable professional judgments" do not support an attorney's failure to investigate a client's personal circumstances.  To the contrary, "[a]s the ABA explained in 1999, 'counsel has a duty to conduct a sufficient investigation to understand the unique issues that confront each client'; counsel should

---

[19]    In a footnote, the DAO also argues that Vincent's immigration consequences are also "unclear" because Vincent would only be denaturalized if he was found guilty of naturalization fraud, and that case has not proceeded to verdict just yet.  *See* ECF No. 18 at 11 n.8.  Thus, the DAO argues, it would be unfair to have expected Vincent's plea counsel to anticipate those consequences and advise Vincent of them.  *See id.*

That argument fails for a number of reasons.  For one, that argument is largely a façade.  The federal prosecutors in the naturalization fraud case already admitted that their case "hinge[d] on the trajectory" of Vincent's state criminal conviction.  A011.  In other words, those prosecutors have already conceded that the immigration consequences are not unclear; they are simply dependent upon the outcome of Vincent's *habeas* proceedings.

For another, it ignores Judge Coleman's factual finding that it was a "foregone conclusion" that Vincent would be convicted of naturalization fraud given "how easy it [would] be for [f]ederal prosecution to prove their case."  *Id.*  According to Judge Coleman, Vincent "face[d] certain deportation because he was a citizen at the time of pleading guilty in front of this Court, but during the naturalization process, he was still committing the crime in which he was convicted."  *Id.*

'interview the client to determine' which 'consequences are likely to be important . . . given the client's particular personal circumstances and the charges the client faces." *Farhane,* 77 F.4th at 156 (Carney, J., dissenting).[20] In any case, the DAO cannot shirk *Padilla*'s holding because Vincent's immigration consequences were "not clear." ECF No. 18 at 10. The *Padilla* Court already recognized that there will "undoubtedly be numerous situations in which the deportation consequences of a plea are unclear." *Padilla*, 559 U.S. at 357. But even in those situations, a criminal defense attorney must "advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369. Vincent's counsel had that duty here, and in neglecting it, Vincent's counsel was constitutionally deficient.

Finally, the DAO argues that Vincent's own misrepresentations caused the consequences of his guilty plea—that is, "[h]ad Vincent been truthful during the naturalization process[,] . . . there could be no federal prosecution for immigration fraud," regardless of any guilty plea. ECF No. 18 at 11. Put differently, the DAO argues that the immigration consequences of Vincent's guilty plea are Vincent's own fault. This argument is a red herring. After all, the same could be said about the facts in *Padilla*. There, Padilla only faced deportation because he pled guilty to drug distribution charges in Kentucky. *See Padilla*, 559 U.S. at 359. That did not relieve Padilla's counsel of his Sixth Amendment duty to advise Padilla of the immigration consequences of that conviction. Instead, *Padilla* imposes an obligation upon an attorney to counsel his client of the "risk of deportation" regardless of what caused that risk. *See id.* at 367; *cf. Singh*, 12 F.4th at 278 n.15 (rejecting government argument that Singh, who made "a guilty plea [] without notice of the

---

[20]    Notably, upon rehearing the case *en banc* and holding that "[t]o provide effective representation, counsel must advise her client as to . . . [the] serious adverse immigration consequences [of denaturalization and deportation] by at least flagging the risk," Judge Carney drafted the majority opinion. *See Farhane*, 121 F.4th at 363.

immigration consequences that could flow from the plea . . . should have known that, should his [naturalization] fraud be uncovered, he could be found removable" because "we do not generally premise procedural protections on what a criminal defendant 'should' know"; in fact, "[i]t is precisely because many criminal defendants do not know the consequences of pleading guilty that we require detailed notice of the resulting penalties").

### 2. Under *Strickland*'s second prong, plea counsel's errors prejudiced Vincent.

The parties agree that under *Strickland*'s second prong, Vincent must establish prejudice. *See* ECF No. 1 at 21; ECF No. 18 at 8–9. Instead, they dispute what Vincent must show in order to prove it.

The Government contends that to show prejudice, Vincent must demonstrate he would have chosen to go to trial rather than plead guilty. *See* ECF No. 18 at 8–9. In support of its position, the Government cites *Lee v. United States*, where the Supreme Court explained that "[w]hen a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain." 582 U.S. 357, 364 (2017). Instead, "the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* at 364–65 (citation omitted).

That is not the applicable standard. Vincent is not claiming that counsel's deficient performance "deprived him of a trial by causing him to accept a plea." Vincent is claiming that, had he known of the risk of deportation from the guilty plea that he entered, there is a reasonable probability that he would have rejected the plea bargain. That is all he needs to show to establish prejudice. *See Padilla*, 559 U.S. at 372 ("[T]o obtain relief on this type of claim, a petitioner must

convince the court that a decision to reject the plea bargain would have been rational under the circumstances." (citation omitted)).[21]

Vincent meets this standard. Had Vincent known about the risk of deportation, it is reasonably likely that he could have negotiated a different plea, such as the plea that Vincent negotiated with the DAO in habeas litigation. *See* ECF No. 12-1 at 5, ¶ c; *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (explaining that prejudice is satisfied where a petitioner shows that "the outcome of the plea process would have been different with competent advice"). Per that agreement, Vincent would have pled guilty "exclusively [to] conduct that occurred after [he] became a United States citizen." *Id.* As Vincent correctly explains, that plea agreement is "objective evidence of what would have been reasonably probable . . . with effective plea counsel." ECF No. 21 at 13–14. Indeed, this is the very outcome that the *Padilla* Court explained that Padilla could have had, but for his counsel's failure to advise him of risks of deportation that would accompany his guilty plea. *See Padilla*, 559 U.S. at 373 ("As in this case, a criminal episode may provide the basis for multiple charges, of which only a subset mandate deportation following conviction. Counsel who possess the most rudimentary understanding of the deportation consequences of a particular criminal offense may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation, as by avoiding a conviction for an offense that automatically triggers the removal consequence.").

---

[21] *See also Kovacs v. United States*, 744 F.3d 44, 52 (2d Cir. 2014) ("We conclude that a defense lawyer's incorrect advice about the immigration consequences of a plea is prejudicial if it is shown that, but for counsel's unprofessional errors, there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense."); *United States v. Kwan,* 407 F.3d 1005, 1017–18 (9th Cir. 2005) ("Kwan could have gone to trial or renegotiated his plea agreement to avoid deportation."), abrogated on other grounds by *Padilla*, 559 U.S. 356.

Even if Vincent did need to prove that he would have "insisted on going to trial" to show prejudice, *see* ECF No. 18 at 12, Vincent would meet that standard.  If Vincent could not have negotiated a plea agreement that would have avoided deportation, trial would have been the only rational decision that he could make.  *See Padilla*, 559 U.S. at 372 (explaining that to show prejudice, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." (citation omitted)).  As the DAO has recognized, "there is no reason to doubt that Vincent would have wanted to avoid deportation."  ECF No. 18 at 10.  Indeed, at the time of his plea in 2018, Vincent had lived in the United States for over three decades; had started his own business, an automotive shop called M & M Auto in 2012; and was married to his wife, who lives in the United States.  By contrast, there is no indication that Vincent had any ties to Haiti; he had called the United States home since he was nine years old.  *Cf. Lee*, 582 U.S. at 370 ("At the time of his plea, Lee had lived in the United States for nearly three decades, had established two businesses in Tennessee, and was the only family member in the United States who could care for his elderly parents—both naturalized American citizens. In contrast to these strong connections to the United States, there is no indication that he had any ties to South Korea; he had never returned there since leaving as a child.").  Thus, in the absence of a plea agreement that would have definitively prevented deportation, Vincent had no rational reason not to proceed to trial.  A trial, at least, would have offered him a chance to contest the charges against him and avoid deportation.  Accordingly, Vincent has sufficiently established the prejudice prong.

## IV.   <u>CONCLUSION</u>

Petitioner Vincent's story should never have unfolded the way that it did.  Had Vincent been advised of the immigration consequences flowing directly from his guilty plea as *Padilla* and

its progeny require, he could have, and likely would have, avoided them. He could have negotiated a different guilty plea—say, the one that he negotiated during habeas proceedings, where he pled guilty only to the crimes that took place after his naturalization. Or, he could have gone to trial—a loss would have meant potential deportation anyway. Given the plea agreement on the table where deportation was a near automatic consequence, Vincent had little to lose.

By failing to advise him of the risks of denaturalization and deportation, Vincent's plea counsel deprived him of his Sixth Amendment right to effective counsel. That conclusion is clear from *Padilla* and its progeny.

For the foregoing reasons, the Court will grant the Petition for a Writ of Habeas Corpus. An appropriate order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**
